Filed 9/11/20  P. v. Thomas CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073036 |
| v. | (Super.Ct.No.  RIF080665) |
| JASON LATRELL THOMAS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Affirmed.

Patricia Ihara, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Jason Latrell Thomas appeals from a trial court's order denying defendant's petition for relief under Penal Code[1] section 1170.95. For the reasons set forth *post*, we shall affirm the trial court's order.

## FACTUAL AND PROCEDURAL HISTORY

### A.   PROCEDURAL HISTORY

In 2001, a jury convicted defendant of first degree murder under section 187, subdivision (a) (count 1), and attempted robbery under sections 211 and 664, subdivision (a) (count 2).[2] The jury also found true the special-circumstance allegations that defendant committed the murder during the course of an attempted robbery under section 190.2, subdivision (a)(17); and that in the commission of the murder, a principal was armed with a firearm under section 12022, subdivision (a)(1). The trial court sentenced defendant to prison for a term of life without the possibility of parole, plus one year.

Defendant appealed from the judgment. On October 8, 2002, we reduced defendant's sentence to 25 years to life because of his juvenile status at the time of the murder. In all other respects, we affirmed the judgment.

On January 7, 2019, defendant filed a petition for relief under section 1170.95. On March 11, 2019, the People filed a response. On April 9, 2019, defendant filed a reply brief in propria persona. At the hearing on April 19, 2019, defendant was represented by

---

[1]  All further statutory references are to the Penal Code unless otherwise specified.

[2]  Clyde Banks was charged as a codefendant. He is not a party to this appeal.

2

a public defender.  Over defense counsel's objection, the court summarily denied the petition on the ground that the petition failed to set forth a prima facie case for relief.

On June 14, 2019, defendant filed a timely notice of appeal.

B.    FACTUAL HISTORY[3]

"On April 9, 1998, at 10:00 p.m., Rodney Martin (Martin), then 31 years old, drove to the Hunt Club apartments in Perris with his brother, Troy Petterway (Petterway), then 26 years old.  Martin and Petterway drove into a carport area and stepped out of the car.  Thomas then approached Petterway on the passenger's side of the car and asked for a cigarette.

"Petterway knew Thomas, thought there might be a fight, and kept his attention on Thomas.  Petterway then saw 'two other guys' approach Martin on the driver's side of the car.  He identified one of the two other guys as Banks, but could not identify the other.[4] Either Banks or the person standing near him said, 'Break yourself,' which meant, 'This is a robbery.'

"Martin told Banks to 'get out of his face' and swung at him.  Banks then pulled a gun out of his jacket and started shooting.  Martin said, 'Run,' and Petterway ran.  As Petterway ran, he heard Thomas yell 'Outlaw.'  Within minutes, Martin died of multiple gunshot wounds.

---

[3] The facts are taken from our opinion in the prior appeal in case No. E029239.

[4] Petterway also told the police that there may have been a fourth person who approached him, with Thomas, on the passenger's side of the car.  Petterway identified Thomas and Banks, but could not identify either of the other two persons.

"Petterway testified that as he was running from the scene he heard several shots fired, with a pause in between. William Owens (Owens), the maintenance supervisor at the apartments and a former weapons instructor in the Marines, also heard two sets of shots fired, with a pause in between. Owens said that the pause was 'like somebody was changing a magazine.'

"Thomas's brother, Malik Swanigan (Swanigan), testified that he was in an upstairs apartment when he heard shots being fired. He ran out of the apartment and halfway down the staircase. From there, he saw Banks shooting Martin. He then saw Thomas take the gun from Banks and shoot Martin several times." (Fn. omitted.)

"After the shooting, Swanigan and Thomas went to see Swanigan's girlfriend, Nina Burton, in Sun City. Burton told the police that the morning after the shooting she overheard Thomas on the telephone bragging that he had shot Martin.

"Several days after the shooting, Swanigan and Thomas went to visit [Lisa] Rufus in Bellflower. There, Thomas confessed to Rufus that he shot Martin, and made additional statements that incriminated Banks."

## DISCUSSION

On appeal, defendant challenges the trial court's summary denial of his section 1170.95 petition to vacate his murder conviction. Defendant argues that (1) the evidence is insufficient to support a finding that he was a major participant who acted with reckless indifference to human life under *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*); and (2) the court violated his constitutional right to due process and right to counsel by denying defense counsel's

4

request for a 90-day stay to give counsel an opportunity to file a reply. As we will explain, defendant's first argument is without merit and his second fails because, whether he was entitled to have his counsel file a reply at this stage of the petitioning process, a reply written by his counsel would not have altered the result of the proceedings.

A.     LEGAL BACKGROUND

"In 2018 the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) . . ., which abolished the natural and probable consequences doctrine. . . . Under section 189, subdivision (e), as amended by Senate Bill No. 1437, a defendant is guilty of felony murder only if he: actually killed the victim; directly aided and abetted or solicited the killing, or otherwise acted with the intent to kill; or 'was a major participant in the underlying felony and acted with reckless indifference to human life.' " [Citations.] The legislation also enacted section 1170.95, which established a procedure for vacating murder convictions for defendants who would no longer be guilty of murder because of the new law and resentencing those who were so convicted." (*People v. Murillo* (Sept. 1, 2020) 2020 Cal.App.LEXIS 838, *7-*8 (*Murillo*).)

"Section 1170.95 allows a defendant serving a sentence for felony murder who would not be guilty of murder because of the new law to petition for resentencing. The statute requires a defendant to submit a petition affirming that he meets three criteria of eligibility: (1) He was charged with murder in a manner 'that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine' [citation]; (2) He 'was convicted of' or pleaded guilty to 'first degree murder or second degree murder' [citation]; and (3) He 'could not be convicted of

5

first or second degree murder because of changes to Section[s] 188 or 189 made effective' as a part of Senate Bill No. 1437 [citation]. As described above, those changes eliminated the natural and probable consequences doctrine as a basis for murder liability, and added a requirement for felony murder that a defendant must have been at least a major participant in the underlying felony and have acted with reckless indifference to human life." (*Murillo*, *supra*, 2020 Cal.App.LEXIS at pp. *8-*9.)

Section 1170.95, subdivision (b), states that the petition must include: a declaration from the petitioner that he or she is eligible for relief under the statute, the superior court's case number and year of conviction, and a statement as to whether the petitioner requests appointment of counsel. (§ 1170.95, subd. (b)(1).) If any of the required information is missing and cannot "readily [be] ascertained by the court, the court may deny the petition without prejudice to the filing of another petition." (§ 1170.95, subd. (b)(2).)

Section 1170.95, subdivision (c), sets forth the trial court's responsibilities once a complete petition has been filed: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

If the court issues an order to show cause, it must hold a hearing to determine whether to vacate the murder conviction. (§ 1170.95, subd. (d).) At that hearing, the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).) The prosecutor and petitioner "may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid.*)

In short, a section 1170.95 petitioner must first make a prima facie case for relief, and if they are able to do so, the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction and recall the sentence. (See, e.g., *People v. Verdugo* (2020) 44 Cal.App.5th 320, 328, review granted Mar. 18, 2020, S260493.) " 'A prima facie showing is one that is sufficient to support the position of the party in question.' " (*People v. Lewis*, *supra*, 43 Cal.App.5th at p. 1137, quoting *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 841.)

In this case, the trial court denied defendant's petition at the first stage of prima facie review under section 1170.95, subdivision (c). "A denial at that stage is appropriate only if the record of conviction demonstrates that 'the petitioner is ineligible for relief as a matter of law.' [Citations.] This is a purely legal conclusion, which we review de novo." (*Murillo*, *supra*, 2020 Cal.App.LEXIS at pp. *9-*10.)

B.    THE TRIAL COURT PROPERLY DENIED DEFENDANT'S PETITION

1.    *THE PROPER VEHICLE TO CHALLENGE A FELONY-MURDER SPECIAL CIRCUMSTANCE IS A HABEAS PETITION*

"To be eligible for resentencing under section 1170.95, [a defendant] must show that he 'could not be convicted of first or second degree murder because of changes to Section[s] 188 or 189 made effective' as a part of Senate Bill No. 1437.  [Citation.] Under the newly amended version of section 189, a defendant can be convicted of felony murder only if he was the actual killer; acted with the intent to kill in aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting in first degree murder; or 'was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.'  [Citation.] These are identical to the circumstances in which a felony-murder special circumstance applies.  [Citation.]  Thus, the jury's special circumstance finding shows as a matter of law that [defendant] could still be convicted of felony murder under the new definition, and prevents [defendant] from making a prima facie case that he is eligible for resentencing." (*Murillo*, *supra*, 2020 Cal.App.LEXIS at pp. *10-11.)

Defendant contends that the jury's true finding on the felony murder special circumstance does not necessarily show that he is ineligible for relief.  In sum, defendant argues that the evidence is insufficient to support a finding that he was a major participant who acted with reckless indifference to human life under *Banks*, *supra*, and *Clark*, *supra*.

8

Two recent cases, however, have found that "the proper remedy for challenging a special circumstance finding is by a petition for habeas corpus, not a petition for resentencing under section 1170.95." (*People v. Galvan* (2020) 52 Cal.App.5th 1134, 1137, 1142 (*Galvan*); *Murillo*, *supra*, 2020 Cal.App.LEXIS at p. 11.) The *Murillo* court stated: "As we explained in *Galvan*, a defendant subject to a pre-*Banks* and *Clark* special circumstance is ineligible for resentencing under section 1170.95 because of the basis of his claim. Although [the defendant] asserts that he could not now be convicted of murder, 'the alleged inability to obtain such a conviction is not 'because of changes' made by Senate Bill No. 1437, but because of the clarification of the requirements for the special circumstances finding in *Banks* and *Clark*. Nothing about those requirements changed as a result of Senate Bill No. 1437. Just as was the case before that law went into effect, the special circumstance applies to defendants who were major participants in an underlying felony and acted with reckless indifference to human life. If [the defendant] is entitled to relief based on *Banks* and *Clark*, the avenue for such relief is not section 1170.95, but a petition for writ of habeas corpus.' " (*Murillo*, *supra*, 2020 Cal.App.LEXIS at pp. *12-13.)

The *Murillo* court went on to state that "[b]y requiring a defendant to seek relief via habeas corpus, we avoid creating a disparity in which similarly situated defendants' cases are evaluated under different standards based solely on the date of their convictions. 'Defendants convicted after the Supreme Court issued its decisions in *Banks* and *Clark* would be required to challenge the sufficiency of the evidence of the special circumstance finding on direct appeal, where the People would need only to show that

9

substantial evidence supported that finding. If the judgment is affirmed, generally it would be the law of the case in any proceedings thereafter as to those findings. [Citations.] But where, as here, a defendant was convicted before *Banks* and *Clark*, if the defendant could bring a collateral challenge under section 1170.95, the prosecution would be required to prove the special circumstance beyond a reasonable doubt. [Citation.] Yet nothing in the language of Senate Bill 1437 suggests that the Legislature intended unequal treatment of such similarly situated defendants.' " (*Murillo*, *supra*, 2020 Cal.App.LEXIS at pp. *12-13.)

We agree with both *Galvan* and *Murillo* and hold that the proper procedure of challenging a felony-murder special circumstance is a habeas petition.

2. *AS A MATTER OF LAW, THE SPECIAL CIRCUMSTANCES AS DEFINED BY BANKS AND CLARK APPLIES TO DEFENDANT*

Assuming arguendo that defendant can challenge the validity of a felony-murder special circumstance via a petition under section 1170.95, defendant's claim fails because his record of conviction, as a matter of law, establishes that the jury's special circumstance finding is valid under the standard established by *Banks* and *Clark*.

Whether there is sufficient evidence that defendant was a major participant in the robbery who acted with reckless indifference to human life is a question we can decide on appeal. "A [d]efendant's claim that the evidence presented against him failed to support [a] robbery-murder special[-]circumstance [finding made prior to *Banks* and *Clark*] . . . is not a 'routine' claim of insufficient evidence." (*In re Miller* (2017) 14

10

Cal.App.5th 960, 979-980.)  The "claim does not require resolution of disputed facts; the facts are a given."  (*Id.* at p. 980.)

Section 190.2 sets forth the special circumstances under which murderers and accomplices can be punished by death or life without possibility of parole.  One such circumstance is when a defendant is found guilty of first degree murder committed while he was engaged in, or was an accomplice to, the commission or attempted commission of a robbery.  (§ 190.2, subd. (a)(17)(A).)  However, as explained *post*, a death resulting during the commission of a robbery (or any other felony enumerated in § 189) is insufficient, on its own, to establish a felony-murder special circumstance for those defendants, like defendant in this case, who were not determined to be the actual killer.  Such defendants can only be guilty of special-circumstance felony-murder if they aid in the murder with the intent to kill (§ 190.2, subd. (c)), or, lacking intent to kill, aid in the felony "with reckless indifference to human life and as a major participant."  (§ 190.2, subd. (d).)

Section 190.2, subdivision (d), was enacted in 1990 to bring state law into conformity with prevailing Eighth Amendment doctrine, as set out in the United States Supreme Court's decision in *Tison v. Arizona* (1987) 481 U.S. 137.  (*Banks*, *supra*, 61 Cal.4th at p. 789.)  "In *Tison*, two brothers aided an escape by bringing guns into a prison and arming two murderers, one of whom they knew had killed in the course of a previous escape attempt.  After the breakout, one of the brothers flagged down a passing car, and both fully participated in kidnapping and robbing the vehicle's occupants.  Both then stood by and watched as those people were killed.  The brothers made no attempt to assist

11

the victims before, during, or after the shooting, but instead chose to assist the killers in their continuing criminal endeavors. [Citation.] The Supreme Court held the brothers could be sentenced to death despite the fact they had not actually committed the killings themselves or intended to kill, stating: '[R]eckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result. The [brothers'] own personal involvement in the crimes was not minor, but rather, . . . "substantial." Far from merely sitting in a car away from the actual scene of the murders acting as the getaway driver to a robbery, each . . . was actively involved in every element of the kidnap[p]ing-robbery and was physically present during the entire sequence of criminal activity culminating in the murder[s] . . . and the subsequent flight. The Tisons' high level of participation in these crimes . . . implicates them in the resulting deaths.' " (*In re Ramirez* (2019) 32 Cal.App.5th 384, 393-394, quoting *Tison* at pp. 157-158.)

"The *Tison* court pointed to the defendant in *Enmund v. Florida* (1982) 458 U.S. 782, . . . (*Enmund*) as an example of a nonkiller convicted of murder under the felony-murder rule for whom the death penalty was unconstitutionally disproportionate. Enmund was the driver of the getaway car in an armed robbery of a dwelling whose occupants were killed by Enmund's accomplices when they resisted. [Citation.] In deciding the Eighth Amendment to the United State Constitution forbids imposition of the death penalty 'on one such as Enmund' . . . , the high court emphasized that the focus

12

had to be on the culpability of Enmund himself, and not on those who committed the robbery and shot the victims [citation]. 'Enmund himself did not kill or attempt to kill; and, . . . the record . . . does not warrant a finding that Enmund had any intention of participating in or facilitating a murder. . . . [T]hus his culpability is plainly different from that of the robbers who killed; yet the State treated them alike and attributed to Enmund the culpability of those who killed the [victims]. This was impermissible under the Eighth Amendment.' " (*People v. Ramirez*, *supra*, 32 Cal.App.5th at p. 394.)

In *Banks*, the California Supreme Court described what is often referred to as the *Tison-Enmund* spectrum. "At one extreme" are people like Enmund—"the minor actor in an armed robbery, not on the scene, who neither intended to kill nor was found to have had any culpable mental state." (*Banks*, *supra*, 61 Cal.4th at p. 800.) "At the other extreme [are] actual killers and those who attempted or intended to kill." (*Ibid.*) Section 190.2, subdivision (d), covers those people who fall "into neither of these neat categories"—people like the Tison brothers, who were major participants in the underlying felony and acted with a reckless indifference to human life. (*Banks*, at p. 800.)

The California Supreme Court articulated several factors intended to aid in determining whether a defendant falls into this middle category, such that section 190.2, subdivision (d), would apply to them. "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or *using* lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of

13

the other participants?  Was the defendant *present at the scene* of the killing, in a position

to facilitate or *prevent* the actual murder, and did his or her own actions or *inaction* play a

particular role in the death?  What did the defendant do after lethal force was used?"

(*Banks*, *supra*, 61 Cal.4th at p. 803, italics added.)  "No one of these considerations is

necessary, nor is any one of them necessarily sufficient."  (*Ibid.*)

 The defendant in *Banks*, Lovie Troy Matthews, was convicted of first degree

murder with a felony-murder special circumstance based on his having acted as the

getaway driver for an armed robbery in which his codefendant Banks and others

participated, and in which Banks shot and killed one of the robbery victims while

escaping.  (*Banks*, *supra*, 61 Cal.4th at p. 796-797.)  Considering Matthews's

involvement in the robbery against the factors just enumerated, the Court "placed [him] at

the *Enmund* pole of the *Tison-Enmund* spectrum."  (*People v. Ramirez*, *supra*, 32

Cal.App.5th at p. 397.)  As a result, the Court concluded "the jury's special-circumstance

true finding cannot stand."  (*Banks*, at p. 811.)  Not long after *Banks*, the Court revisited

this issue in *Clark*, also concluding the evidence was insufficient to support the

defendant's robbery-murder special-circumstance findings.  (*Clark*, *supra,* 63 Cal.4th at

p. 611.)  The defendant in Clark *planned* a burglary of a computer store to occur after the

store was closed.  According to the plan, his codefendant was to carry out the burglary

and carry an unloaded gun.  However, his codefendant ended up carrying a gun loaded

with one bullet and fired that bullet when he unexpectedly encountered a store employee,

killing her.  (*Id.* at pp. 612-613.)  The Supreme Court concluded there was insufficient

evidence Clark acted with reckless indifference to human life because (a) Clark was not

14

physically present when his codefendant killed the employee and was therefore unable to intervene; (b) there was no evidence Clark knew his codefendant was predisposed to be violent; and (c) Clark planned for the robbery to take place after the store closed, and the gun was not supposed to be loaded. (*Id.* at pp. 619-622.). In sum, the court believed there was "nothing in [Clark's] plan that one can point to that elevated the risk to human life beyond those risks inherent in any armed robbery." (*Id.* at p. 623.)

In this case, defendant argues that because "the jury did not decide whether the witnesses who inculpated [defendant] as the shooter were reliable and credible, [defendant's] case is similar to the facts of various other recent cases in which the evidence was insufficient to support a felony murder special circumstance." He cites to *Banks*, *supra*, 61 Cal.4th 88 and *In re Miller*, *supra*, 14 Cal.App.5th 960 for support. Neither case aids defendant in his argument.

As noted *ante*, in *Banks*, what the court found significant was Matthews's role as the getaway driver who was not aware his codefendants were going to use guns during the robbery. Because Matthews "did not see the shooting happen, did not have reason to know it was going to happen, and could not do anything to stop the shooting or render assistance," the Court concluded Matthews was not "willingly involved in the violent manner in which the particular offense [was] committed." (*Banks*, *supra*, 61 Cal.4th at pp. 801, 803, fn. 5, 807.)

In *In re Miller*, *supra*, 14 Cal.App.5th 960, the defendant and his cohorts planned one of their usual "follow-home" robberies. A "spotter" would go to a bank and find a person withdrawing a large sum of money, "the driver" would follow that person to his or

15

her destination and "the getter" would confront the person and take the money. They sometimes used guns, but not always. (*Id.* at p. 965.) In the charged incident, the defendant was the spotter and told his cohorts to follow the victims. Thereafter, one of the cohorts ended up fatally shooting one of the victims. The robbers went back to the defendant's house to divide up the money. (*Id.* at pp. 964-965.) The court held that there was insufficient evidence to support the felony-murder special circumstance because the defendant did not know that a shooting would occur, was not present for the shooting, and could not prevent it. There was nothing to show that the defendant knew that the risk of human life involved in this robbery was greater than the risk involved in the usual armed robbery. (*Id.* at pp. 966-967, 974-977.)

Here, in contrast to *Banks* and *Miller*, defendant was a willing participant in the violent manner in which the robbery and murder took place. Defendant and his codefendant approached the two victims, Martin and Petterway. One of them said "Break yourself," which meant, "This is a robbery." When Petterway started to run away, he heard defendant yell "Outlaw" and within minutes, Martin died of multiple gunshot wounds. After defendant's codefendant shot Martin several times, defendant took the gun from his codefendant and shot Martin several more times. Burton overheard defendant bragging that he had shot Martin. Moreover, defendant confessed to shooting Martin. Indeed, we are not aware of a single case that concludes a defendant who personally committed a robbery, used a gun, and was present for the shooting did not meet the standard in section 190.2, subdivision (d). The defendants who have been able to get their special circumstance findings vacated are those who were not wielding guns

16

themselves and also not present for the shooting (either because they were acting as getaway drivers or because they were involved in the planning of the crime only). Defendant's conduct is clearly distinguishable. "We are not aware of any case where a court overturned a special circumstance finding in which the defendant was present and bore such a strong responsibility for the victim's death." (*Murillo*, *supra*, 2020 Cal.App.LEXIS at p. 20.)

As the court in *Murillo* recognized, "[i]n *People v. Smith* (2020) 49 Cal.App.5th 85, 95-96 (*Smith*), our colleagues in Division 5 of [the Second District] held that a defendant could challenge a pre-*Banks* and *Clark* special circumstance finding in a petition under section 1170.95. The court also held that it was inappropriate to determine at the first stage of review under section 1170.95 whether the defendant met the standard for a special circumstance under *Banks* and *Clark* because at the final eligibility hearing, a petitioner has the opportunity to introduce new or additional evidence regarding his eligibility for resentencing. [Citation.] The court in *Smith* held that, because a trial court cannot know what evidence a petitioner may submit, it cannot at the first stage of review determine that a petitioner was a major participant who acted with reckless indifference to human life." (*Murillo*, *supra*, 2020 Cal.App.LEXIS at pp. *20-21.)

We agree with *Murillo* "that a petition under section 1170.95 cannot be used to challenge a felony-murder special circumstance finding. Even if we assume that such a challenge can be asserted in a section 1170.95 petition, we disagree with *Smith* regarding the standard for evaluating the evidence to determine whether a defendant has made a prima facie showing of eligibility under that section. If as a matter of law the record of

17

conviction shows, as it does here and did in *Smith*, that the defendant was a major participant who acted with reckless indifference to human life, and the defendant does not claim he has new evidence to present, he has not made a prima facie case. This view is consistent with existing case law construing section 1170.95, including *Lewis*, *supra*, 43 Cal.App.5th 1128, review granted March 18, 2020, S260598 and *Verdugo*, *supra*, 44 Cal.App.5th 320, review granted March 18, 2020, S260493." (*Murillo*, *supra*, 2020 Cal.App.LEXIS at p. *21.)

Here, like the record in *Murillo,* "the record of conviction establishes as a matter of law that [defendant] was a major participant who acted with reckless indifference to human life, as those terms were clarified in *Banks* and *Clark*, and [defendant] does not claim to have any new evidence on this issue. Therefore, even if his claim [were] cognizable under section 1170.95, [defendant] was not eligible for relief under that statute." (*Murillo*, *supra*, 2020 Cal.App.LEXIS at pp. *21-22.)

C.     ANY ERROR IN DENYING DEFENDANT'S REQUEST TO HAVE HIS COUNSEL FILE A REPLY BRIEF WAS HARMLESS

Defendant also argues that the trial court prejudicially erred when it violated his Federal constitutional right to due process and his right to counsel by denying counsel's request for a 90-day stay, and by summarily denying defendant's petition for resentencing without giving counsel an opportunity to file a reply. We need not address this issue because even if it were error for the trial court, the error was harmless beyond a reasonable doubt. First, as noted above, the proper procedure for challenging a felony-murder special circumstance is via a habeas petition. Moreover, even if defendant could

18

challenge the validity of his conviction by means of a section 1170.95 petition, given the trial evidence, counsel would not have been able to demonstrate in a reply brief, or otherwise, that defendant was not a major participant who acted with reckless indifference to human life.

## DISPOSITION

We affirm the trial court's order denying defendant's petition.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
Acting P. J.

MENETREZ
J.